U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 AUG 29 PM 1:24

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:12-cr-115 |
| ) | |
| GEORGE ALLEN ) | |

# ENTRY ORDER DENYING
## DEFENDANT'S MOTION FOR NEW TRIAL
(Doc. 58)

This case comes to the court on Defendant George Allen's motion for a new trial. (Doc. 58.) On July 24, 2013, a jury found Defendant guilty of one count of knowingly and willfully conspiring to set fire upon the public domain and upon lands under the jurisdiction of the United States in violation of 18 U.S.C. §§ 371 and 1855. At the time of the arsons, Defendant was a captain of the Wallingford Volunteer Fire Department ("WFD") and his father was the WFD's chief.

Defendant asks the court to vacate his conviction and order a new trial in the interests of justice for two reasons: first, because the jury considered an unsworn transcript of Defendant's confession in conjunction with hearing the audiotape of that confession. And second, because the court permitted the government to introduce evidence regarding the general atmosphere at the WFD during the time period in question. Neither of the cited grounds warrants a new trial.

Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." With regard to a "Rule 33 motion to vacate, '[t]he ultimate test is whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted)). A new trial is not warranted if the court is "satisfied that competent, satisfactory and sufficient evidence in th[e] record supports the jury's

finding that this defendant is guilty beyond a reasonable doubt[.]" *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). "In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account," and there "must be a real concern that an innocent person may have been convicted" before the "interest of justice" requires a new trial. *Id.* The Second Circuit has observed that the granting of a Rule 33 motion "[is] disfavored in this Circuit." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995).

**I.    The Transcript of Defendant's Confession.**

The government asserts that it first provided a transcript of Defendant's audiotaped confession to Defendant on October 26, 2012 as part of the government's initial discovery. In ruling on Defendant's motion to suppress (Doc. 15), the court considered the transcript which was admitted, without objection, as government's Exhibit 2. It also relied on the transcript in its Opinion and Order Denying Defendant's Motion to Suppress dated June 10, 2013 (Doc. 27). At the time, Defendant did not object to the court's use of the transcript and did not identify any errors in it. To the contrary, Defendant provided the transcript to his expert witness, Eric Y. Drogin, J.D., Ph.D, ABPP, for his use in an evaluation of Defendant. *See* Doc. 24 at 5 (noting that on the second day of his testing of Defendant "Mr. Allen's interview was conducted with the benefit of a transcript of his May 2008 statement.").

Pretrial, Defendant informed the court and the government that he may use the transcript as substantive evidence at trial. In his Supplemental Exhibit List (Doc. 41) filed on July 17, 2013, Defendant advised "that the defense may use as evidence at trial, and in appropriate circumstances, may attempt to introduce into evidence the following: . . . Transcript of interrogation of George Allen on May 20, 2008." Again, Defendant identified no errors in the transcript. He also did not seek a hearing before the court regarding its accuracy or propose that an alternative version of the transcript be used.

Prior to trial, the government provided to Defendant a "final, synched transcript of the GA interview, with time codes on it." (Doc. 59 at 5.) Defendant did not identify any errors in it or move in limine for its exclusion.

2

During the trial, when the government sought to present Defendant's audiotaped confession and the transcript of it simultaneously to the jury, Defendant objected to the use and admission of the transcript, claiming there were errors in its transcription of the words "yes" and "yup." Tr. at 182-83 ("I do object to the introduction of the transcript, Judge. There are, what we believe are transcription errors. And in particular some, some important answers to questions which we think when you hear it on the audio are, at best, ambiguous what the answer is that have been transcribed as a "yes" or a "yup." And I think we should leave it for the jury to discern for itself what those answers are. And I think having a transcript where it says "yup". . . is unduly likely to persuade the jury."). The court initially permitted the jury to hear the audiotape of Defendant's confession without the benefit of the transcript. When five of the twelve jurors indicated that they could not adequately follow the audiotape, the court permitted the government to scroll the transcript as the audiotape played. The transcript was not admitted into evidence. The court *sua sponte* gave the jury a cautionary instruction: "I'm going to give the jury strict instructions that you need to obey. And that is focus on what you are hearing as opposed to what you're seeing. It is not at all uncommon for a transcript to be incorrect. And that's why my question to the [the government] was, is this [transcript] certified [?] It is not. So this is an aid to you, but when you have a discrepancy between what you hear and what you see you must go with what you hear." Tr. at 189.

Defendant's confession included numerous admissions that were audible without the benefit of the transcript, including that he had participated in sixteen fires set by the WFD. With regard to one of the fires set on federal lands, Defendant's counsel argued in closing that Defendant did not actually admit to participating in the fire and had answered "nyup" instead of "yup." During deliberations, the jury asked to re-hear that portion of the audiotape and did so without the benefit of the transcript. The jury returned a guilty verdict shortly thereafter.

Although Defendant now claims "the transcript which was published to the jury was inadmissible, inaccurate and unduly prejudicial," (Doc. 58 at 2), it was never admitted, he identifies no actual errors in it, and he does not establish how it was

3

prejudicial. In *United States v. Chiarizio*, 525 F.2d 289 (2d Cir. 1975), the Second Circuit held that provided the transcript is disclosed pretrial to the defendant, he cannot claim errors in it in the midst of trial and thereby preclude its admission. As the court noted, "[i]f the defense can withhold its objections to the transcripts until the trial is well underway, it would be necessary to suspend the district court proceedings while the judge conducts a lengthy in camera comparison of the tapes and transcripts. Rather than condone such extensive disruptions, the law requires that objections be made when they first arise." *Id.* at 294. Here, Defendant had approximately nine months and numerous opportunities to identify any errors in the transcript. He failed to raise any objection pretrial and under *Chiarizio* he thereby waived any right to do so in the midst of trial.

In any event, in this case, the transcript was not admitted and the court followed "the general, and preferred, practice in dealing with tape recorded evidence [which] is to play the tapes and allow transcripts only as an aid." *United States v. Bahadar*, 954 F.2d 821, 830 (2d Cir. 1992); *see also United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir. 1992) ("It is well settled that the district court has broad discretion 'in deciding whether to allow the jury to use written transcripts as aids in listening to tape recordings.'"); *United States v. Carbone*, 798 F.2d 21, 26 (1st Cir. 1986) ("We have approved, as have most circuits, the use of transcripts as a jury aid in following tape recording playbacks.").

Finally, two other witnesses, Charlie Woods and Matt Burnham, provided detailed testimony regarding Defendant's participation in the fires, including the fires set on federal lands. Accordingly, even in the absence of a transcript of Defendant's confession, there was ample evidence of Defendant's participation in a conspiracy to set the federal fires which established Defendant's guilt beyond a reasonable doubt. A new trial is therefore not warranted. *See Canova*, 412 F.3d at 349 ("The 'ultimate test' is 'whether letting a guilty verdict stand would be a manifest injustice[.] There must be a real concern that an innocent person may have been convicted.") (citation omitted).

## II. The Atmosphere of the WFD.

Defendant's second and final challenge is to evidence presented by two members of the WFD who testified that at the time of the fires, a clique had formed in the WFD consisting of Defendant and his twin brother and an cadre of younger firefighters who responded to the Defendant's influence and his behavior as a role model. This evidence included allegations that various firefighters, including Defendant, were not following the chain of command but were instead "free lancing" and pursuing their own ideas of how fires should be fought and engaging in temper tantrums during the fires. These witnesses also described how Defendant's father, the chief of the WFD, appeared to tolerate Defendant's behavior and to resist efforts to intervene and change it.

Defendant claims that the evidence was inadmissible and prejudicial character and other bad acts evidence that should have been excluded under Fed. R. Evid. 404(b). Although he objected to some of this evidence, Defendant did not object to all of it and he did not seek a limiting instruction as to how it could be used. The evidence was probative in describing how boredom and peer pressure motivated the otherwise inexplicable arsons and how Defendant gained control over the junior firefighters' actions, directing them how, when, and where to set the fires.

In a conspiracy, the prosecution may offer evidence "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to explain to the jury how the illegal relationship between the participants in the crime developed." *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *see also United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.") (citation omitted). Here, the evidence was used solely for the purpose of establishing the context in which the arsons on federal lands occurred and the motive and modus operandi for committing them. Evidence that Defendant presided over a social clique at the WFD and acted as a dubious role model was not used to establish Defendant had a propensity to commit crimes or acted in accordance with a character trait, but rather assisted in

5

explaining the relationship between the co-conspirators and how Defendant set the tone and direction for his considerably younger and less experienced subordinates. Those subordinates testified and provided independent evidence about the atmosphere at the WFD and Defendant's behavior as their captain. They testified that Defendant directed certain fires to be set so that Defendant could leave a boring situation at his regular job and speed to the fires in a fire engine accompanied by sirens and lights and thereby set what one witness described as the "best response time in the county." The government supplemented this evidence with cell phone records that documented the calls between Defendant and these junior firefighters and then tied those communications to the fires in question. The evidence from the two other WFD members was thus, at best, cumulative and it was substantially more probative than it was unfairly prejudicial. *See United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985) ("Courts have characterized Rule 403 as an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.") (collecting cases); *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission."). Evidence of the general atmosphere at the WFD during the time in question therefore does not necessitate a new trial. *See* Fed. R. Crim. P. 33; *Snype*, 441 F.3d at 140.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial (Doc. 58) is DENIED.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 29th day of August, 2013.

Christina Reiss, Chief Judge
United States District Court

6